# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Seizure of )<br>*(Briefly describe the property to be seized)* )<br>60,863,026 in Nigerian Naira currency and .54122 )<br>bitcoin in the Account Name of Praise Igbo at the )<br>Busha Cryptocurreny Exchange ) | Case No. 23-MJ-106 |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the __United Kingdom__ District of _____ is subject to forfeiture to the United States of America under __18__ U.S.C. § __981 & 982__ *(describe the property)*: 28 U.S.C. § 2461

60,863,026 in Nigerian Naira fiat currency and .54122 bitcoin in the Busha Cryptocurreny Exchange Account in the Name of Praise Igbo, Date of Birth: September 1, 2001, email address: praisehumphery295@gmail.com, Bank Verification No. 22521740580, and associated with the following two cryptocurrency addresses: 3Kd5GFdcsvJQiCUdCwkzPZDPYhCZ2wBPQ7 and 3JWUC5JwBaGVXyrYEbEH97gRf9wSGW7yfu

The application is based on these facts:
See attached affidavit of EBRSO Deputy Kristen McKnight, assigned to the United Services Secret Service Task Force.

✓ Continued on the attached sheet.

Application being submitted by email/.pdf and attested by me as true and accurate by telephone consistent with Federal Rules of Procedure 4.1 and 41.3(d)(1) on: October 31, 2023

Sworn to before me and signed in my presence.

Date: 10/31/2023

City and state: Baton Rouge, LA

*Kristen McKnight*

*Applicant's signature*

Deputy Kristen McKnight

*Printed name and title*

*Judge's signature*

Magistrate Judge Richard L. Bourgeois, Jr.

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR SEIZURE WARRANT

I, Kristen McKnight, being duly sworn, state the following:

### Affiant's Background

1. I am currently employed as a Deputy with the East Baton Rouge Sheriff's Office ("EBRSO"), have been a Deputy for over ten years, and am presently assigned to the United States Secret Service Task Force. During my tenure, I have been assigned to investigate violations of state laws, including Illegal Transmission of Monetary Funds, Computer Fraud, and Money Laundering. I received criminal investigative training at NW3C- National White Collar Crime Center, RCTA- Regional Counterdrug Training Academy, and NCFI- National Computer Forensics Institute, pertaining to criminal investigations of Money Laundering, Illegal Transmission of Monetary Funds, Identity Theft, and Recovery of Digital Currency. Additionally, the Affiant has training in cryptocurrency investigations and methods to trace cryptocurrency transactions.

2. As an EBRSO Deputy with over ten years of experience, I have conducted numerous investigations of financial and fraud crimes. As part of these investigations, I have conducted or participated in numerous field interviews of suspects and witnesses and electronic and physical surveillance, as well as researched bank account documents, records, and bank statements, in addition to documents relating to the wiring of monies between banks. I have also drafted numerous affidavits in support of search warrants and seizure warrants. Through my training, education, and past experience, I have become familiar with various financial frauds and schemes such as bank frauds, frauds involving Government programs, and other such wire and mail fraud schemes.

3. In addition, I have conducted follow-up investigations concerning the concealment

of assets, money, bank records, and the identification of co-conspirators through the use of computers, falsified loan applications, ledgers, telephone bills and records, photographs, and bank checks, all as related to various financial frauds and schemes.

4.  The facts and information mentioned in this Affidavit are based on my own participation in the criminal investigation and my conversations with other law enforcement agents and others who are assigned to assist me in this investigation. My direct participation has included the review of financial information, documents, and cryptocurrency exchange statements of Praise Igbo, as well as other records related to this investigation.

5.  This Affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of a seizure warrant and, therefore, it does not include all the facts that I have learned during the investigation. Where the contents of documents and the actions and statements of others are reported herein, they are, unless otherwise indicated, reported only in substance and in part. I have set forth only the facts that I believe are necessary to establish the probable cause to believe that evidence, fruits, and instrumentalities of violations of the TARGET OFFENSES are currently located in the TARGET ASSETS in the TARGET ACCOUNT.

## Purpose of the Affidavit

6.  I make this Affidavit in support of the Government's application for a seizure warrant to seize 60,863,026 in Nigerian Naira fiat currency and .54122 bitcoin (collectively, the "TARGET ASSETS") from the following cryptocurrency wallet located at the Bucha Cryptocurrency Exchange associated with the account identified as follows:

> Praise Igbo, Date of Birth: September 1, 2001, email address: praisehumphery295@gmail.com, Bank Verification No. 22521740580, associated with the following two cryptocurrency addresses:
> 3Kd5GFdcsvJQiCUdCwkzPZDPYhCZ2wBPQ7 and
> 3JWUC5JwBaGVXyrYEbEH97gRf9wSGW7yfu (hereinafter referred to as the "TARGET ACCOUNT").

7.     As set forth herein, I believe that probable cause exists to conclude that located in the TARGET ACCOUNT exists evidence of crime, fruits of crime, and instrumentalities of violations of Title 18, United States Code, Sections 1343 (Wire Fraud) and Title 18, United States Code, Section 1956 (Laundering of Monetary Instruments) (hereinafter collectively referred to as the "TARGET OFFENSES"), and that, therefore, this account is forfeitable, pursuant to 18 United States Code, Section 981(a)(1)(C) and 28 United States Code, Section 2461, 18 United States Code, Section 981(a)(1)(A), and 18 United States Code, Section 982(a)(1). I believe that there are sufficient grounds for the issuance of the requested seizure warrant under 18 U.S.C. § 981(b) (civil seizure warrant authority) and 21 U.S.C. § 853(f) (criminal seizure warrant authority).

## Authority for Seizure

18 U.S.C. § 1343 – Wire Fraud

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1956(a)(2) – Laundering of Monetary Instruments

Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place in the United States to or through a place outside the United States-

(A) with the intent to promote the carrying on of specified unlawful activity; or
(B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part-

3

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity,

shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater, or imprisonment for not more than twenty years, or both.

21 U.S.C. § 853(f) – Warrant of Seizure

The Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant. If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property.

21 U.S.C.§ 853(l) - Jurisdiction to enter orders

The district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section.

18 U.S.C. § 981 – Civil Forfeiture

(a)(1) The following property is subject to forfeiture to the United States:

(A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property.

. . .

(C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting "specified unlawful activity" (as defined in section 1056(c)(7) of this title) . . . .[1]

(b)(1) Except as provided in Section 985, any property subject to forfeiture to the United States under subsection (a) may be seized by the Attorney General and, in the case of property involved in a violation investigated by the Secretary of the Treasury or the United States Postal Service, the property may also be seized by the Secretary of the Treasury or

---

[1] 18 U.S.C. § 1956(c)(7)(A) defines "specified unlawful activity" as "any act or activity constituting an offense listed in section 1061(1) of this title . . . ." 18 U.S.C. § 1061(1) lists numerous offenses including "section 1343 (relating to wire fraud)."

4

the Postal Service, respectively.

18 U.S.C. § 982 – Criminal Forfeiture

(a)(1) The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

18 U.S.C. § 984 – Civil Forfeiture of Fungible Property

> (a)(1) In any forfeiture action in rem in which the subject property is . . . funds deposited in an account in a financial institution (as defined in section 20 of this title), . . . --
>
> > (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
> >
> > (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.
>
> (b) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

8. I believe that a seizure warrant as to the TARGET ASSETS would secure the property and prevent it from being moved, transferred, or depleted. Because funds in a cryptocurrency exchange account are fungible and easily transferable, I believe that a seizure warrant is the appropriate means to secure these funds, and that restraining orders or protective orders would not be sufficient.

9. I am further advised that, in essence, Section 984 allows the United States to seize for civil forfeiture identical property found in the same place where the guilty property has been kept. *See United States v. All Funds Presently on Deposit at American Express Bank*, 832 F. Supp.

5

542, 556 (E.D.N.Y. 1993). I am advised that, pursuant to 18 U.S.C. § 984(a)(1)(B), this Affidavit need not demonstrate that the monies now in TARGET ACCOUNT are the particular monies involved in wire fraud and money laundering, so long as the forfeiture is sought for other funds on deposit in that same account.

10. Moreover, I am advised that the fungibility rule of Section 984(b) cannot reach back in time for an unlimited period, but rather applies so long as the action to forfeit the property is commenced within one year from the date of the offense giving the basis for the forfeiture. *See United States v. $79,650 Seized from Bank of America account ending in -8247, in name of Afework*, 2009 WL 331294, *3 (E.D. Va. Feb. 9, 2009). Here, as described below, the dates of the offense giving rise to the seizure are within the one-year period.

### BACKGROUND CONCERNING VIRTUAL CURRENCY

11. "Digital currency" or "virtual currency" is currency that exists only in digital form; it has the characteristics of traditional money, but it does not have a physical equivalent. Cryptocurrency, a type of virtual currency, is a network-based medium of value or exchange that may be used as a substitute for fiat currency to buy goods or services or exchanged for fiat currency or other cryptocurrencies.[2] Examples of cryptocurrency are Bitcoin (or BTC) and Ethereum (or ETH). Cryptocurrency can exist digitally on the internet, in an electronic storage device, or in cloud-based servers. Although not usually stored in any physical form, public and private keys (described below) can be printed or written on a piece of paper or other tangible object. Cryptocurrency can be exchanged directly person to person, through a cryptocurrency exchange, or through other intermediaries. Most cryptocurrency is not issued by any government, bank, or company; it is instead generated and controlled through computer software operating on a

---

[2] Fiat currency is currency issued and regulated by a government such as the U.S. Dollar, Euro, or Japanese Yen.

6

decentralized peer-to-peer network. Most cryptocurrencies have a "blockchain," which is a distributed public ledger, run by the decentralized network, containing an immutable and historical record of every transaction.[3] Cryptocurrency is not illegal in the United States.

12. "Bitcoin"[4] is a decentralized digital currency that can be used and transferred electronically from person-to-person, independent of financial institutions. Bitcoin transactions are maintained in a ledger that can be accessed electronically from anywhere in the world. Bitcoin often is used by cybercriminals to conduct illicit transactions because of its perceived anonymity and its ability to be transferred between people internationally. Bitcoin is stored on the Bitcoin network in what are called bitcoin addresses. Bitcoin holders transmit bitcoin between bitcoin addresses. Each bitcoin address is controlled using a unique, corresponding private key —a kind of cryptographic password needed to access the address. Only the owner of the private key for an address can authorize the transfer of bitcoin from that address to another bitcoin address. Bitcoin addresses are often stored alongside their corresponding private keys in digital wallets, which is a document or piece of hardware or software that contains a set of cryptocurrency addresses and their corresponding private keys, which can be used to transfer funds from those addresses. No identifying information about the payor or payee is transmitted in a bitcoin transaction, as generally only the bitcoin addresses of the parties are needed for the transaction.

13. A user typically acquires bitcoin from "bitcoin exchanges." Bitcoin exchanges generally accept payments of fiat currency, and, for a fee, transfer a corresponding number of bitcoin to the customer. Exchanges likewise can be used to convert bitcoin back into fiat currency. Cryptocurrency exchangers typically accept payments of fiat currency (currency which derives its

---

[3] Some cryptocurrencies operate on blockchains that are not public.
[4] Since Bitcoin is both a cryptocurrency and a protocol, capitalization differs. Accepted practice is to use "Bitcoin" (singular with an uppercase letter B) to label the protocol, software, and community, and "bitcoin" (with a lowercase letter b) to label units of the cryptocurrency. That practice is adopted here.

value from government regulation or law) or other convertible digital currencies to obtain the desired cryptocurrency. When a user wishes to purchase, for example, bitcoins from an exchanger, the user will typically send payment in the form of fiat currency, often via bank wire or ACH, or other convertible digital currency to an exchanger, for the corresponding number of bitcoins based on a fluctuating exchange rate. The exchanger, often for a commission, will then typically attempt to broker the purchase with another user of the exchange that is trying to sell bitcoins, or, in some instances, will act as the seller itself. If the exchanger can place a buyer with a seller, then the transaction can be completed. The user can then conduct transactions with other users of the cryptocurrency, by transferring bitcoins to their Bitcoin addresses, via the Internet.

14. When a user acquires cryptocurrency, ownership of the cryptocurrency is transferred to the user's "public address" on the "blockchain" for that cryptocurrency. The "public address" is somewhat analogous to a bank account number, and is comprised of a string of letters and numbers that is often dozens of characters in length (depending on the cryptocurrency). All transactions for Bitcoin, Ether, and many other cryptocurrencies are recorded on what is known as a "blockchain." This is essentially a distributed public ledger that keeps track of all transactions for a given cryptocurrency, incoming and outgoing, and updates regularly (multiple times per hour). The blockchain records every address that has ever received a unit of that cryptocurrency and maintains records of every transaction for each public address. This is true for Bitcoin on the Bitcoin blockchain, and for Ethereum on the Ethereum blockchain. The integrity of the historical record on a blockchain is secured using cryptography.

15. Little to no personally identifiable information about the payer or payee is transmitted in a transaction on the Bitcoin or Ethereum blockchains. These transactions occur using a public key and a private key. A public key (reflected in the public address) is used to

receive units of the cryptocurrency, and a private key is used to allow withdrawals from a public address. This is done by using the private key in a cryptographic "digital signature" that provides for verification and non-repudiation, in that only a person or entity holding the private key corresponding to a given public address (public key) can provide a verifiable digital signature, and anyone in the Bitcoin or Ethereum network can use that digital signature to authenticate the transaction. Only the public address of the receiving party and the sender's private key are needed to complete the transaction, which by themselves rarely reflect any identifying information.

## Probable Cause to Support Seizure of Assets

16. In February 2023, the victim, who is a resident of Baton Rouge, Louisiana, contacted the East Baton Rouge Sheriff's Office in reference to a theft complaint. The victim advised that he had invested approximately $115,000 of his own funds in bitcoin in 2022 with someone he believed to be a successful cryptocurrency trader.

17. In early June 2022, the victim joined an online discussion forum for cryptocurrency trading, using a Telegram application on his cellular phone. The victim began conversations with one of the members of this online forum who claimed to be an individual named "Jessica Allen." "Jessica" represented herself as a successful cryptocurrency trader in the United States and other parts of the world.

18. The victim agreed to invest funds with "Jessica" and believed that he (the victim) would be investing in bitcoin. "Jessica" instructed the victim to go to a website, which he was led to believe was a legitimate website for investing in cryptocurrency. After visiting the website, the victim was instructed to open and establish a wallet with Crypto.com, a cryptocurrency exchange based in Malta, and a wallet with Blockchain.com, a cryptocurrency exchange based in part in the

9

United States. Based on the instructions from "Jessica," the victim opened legitimate wallets at Crypto.com and Blockchain.com.

19. From June 2022 until early August 2022, over a period of approximately 56 days, the victim used funds from his bank account to purchase approximately 5.26 bitcoin, which he initially held in his Crypto.com wallet. The victim estimated that this bitcoin was valued at approximately US$115,000 at the time of investment. Per instructions from "Jessica," the victim subsequently transferred this bitcoin in 20 separate transfers, from June 10, 2022, through August 5, 2022, into one of the three following addresses in/associated with his Blockchain.com wallet:

    135n5DdEoqa7nGCDfVb88tjU1ndW6LLmUt

    17xdJ2FQnwNbW6HgJoUTgtihJgKQsk8RkB

    1Q1QBZX5bh5RSe32vaUx1kk52EeBWHYFEu

All of the 20 transfers were made by the victim from Baton Rouge, Louisiana. Once the bitcoin was transferred into one of the three addresses in his Blockchain.com wallet, the victim never transferred any of the bitcoin from this wallet, was never instructed to transfer any of this bitcoin from this wallet, and was never told that any of this bitcoin would be transferred from this wallet.

20. At some point during his email conversations with "Jessica," "Jessica" instructed the victim to click on the link https://t.me/Jessicaallenflip_trade because she claimed that her website was having "maintenance issues."

21. The victim was led to believe that the balance of his Blockchain.com wallet was rapidly growing. On August 5, 2022, the victim logged into his Blockchain account and saw the below:



The above was provided by the victim and is a screenshot from the victim's cell phone on August 5, 2022, showing that his supposed balance in his Blockchain wallet was $414,618.00.

22. The Affiant conducted a blockchain analysis to trace the victim's bitcoin, which showed the transfer of the victim's bitcoin from his Crypto.com wallet into one of the three addresses (listed in Paragraph 19) in/associated with his Blockchain.com wallet. The blockchain analysis further revealed that, between June 10, 2022, and August 5, 2022, approximately 5.26 bitcoin was transferred in 20 separate transactions from the addresses associated with the victim's Blockchain.com wallet to an account/wallet associated with the following addresses: (1) 3Kd5GFdcsvJQiCUdCwkzPZDPYhCZ2wBPQ7 and (2) 3JWUC5JwBaGVXyrYEbEH97gRf9wSGW7yfu (the Target Wallet Addresses). U.S. authorities determined from further investigation that the Target Wallet Addresses were associated with an account/wallet at the Busha Cryptocurrency Exchange (the TARGET ACCOUNT).

23. Unknown to the victim at the time, his funds had been diverted to the TARGET ACCOUNT. The victim subsequently learned that the balance reflected on his Blockchain account was false. He could log into his Blockchain account to view his balance. However, at some point, he was not able to gain access to withdraw or transfer out any of his funds in this account. He was only able to transfer his assets (bitcoin) from his Crypto.com account into his Blockchain wallet addresses. The victim believes that he must have lost full access to his Blockchain account after clicking on the link that "Jessica" provided to him.

24. As part of the investigation, and in light of the fast-moving and pseudo-anonymous nature of cryptocurrency, U.S. authorities contacted the Busha Exchange for informal and voluntary assistance regarding the stolen funds. The Busha Exchange indicated that the customer

associated with the TARGET ACCOUNT, who provided a Nigerian National Identification Number Slip to the exchange, was:

| | |
|---|---|
| Name: | Praise Igbo |
| Address: | 32 Umunchi Street |
| | Oyigbo, Rivers State, Nigeria |
| Date of Birth: | September 1, 2001 |
| Telephone: | +2348108123528 |
| Email: | praisehumphery295@gmail.com |
| Bank Verification No.: | 22521740580 |

U.S. authorities believe that Igbo was the individual using the name "Jessica Allen" for purposes of stealing the victim's cryptocurrency.

25. The Affiant requested that the Busha Exchange provide statements of Praise Igbo's account (TARGET ACCOUNT). The Busha Exchange provided account statements from June 2022 through May 2023. A review of Igbo's statements from the TARGET ACCOUNT revealed that, once the victim's bitcoin was transferred from one of the three addresses associated with his (the victim's) Blockchain.com account to the TARGET ACCOUNT, the account holder (presumably Igbo) usually sold the bitcoin the same day and converted it into Nigerian Naira fiat currency. Specifically, for the first 18 of the 20 separate transfers from the victim's Blockchain.com wallet into the TARGET ACCOUNT, which occurred from June 10, 2022, through July 20, 2022, the bitcoin was converted into Nigerian Naira the same day as the transfer of bitcoin. For the last two transfers, on August 3 and August 5, 2022, a portion of the victim's bitcoin was converted into Nigerian Naira, and the balance of the victim's bitcoin transferred into the TARGET ACCOUNT remained in the form of bitcoin. A review of the account statements for the TARGET ACCOUNT revealed that the account holder (presumably Igbo) converted a total of approximately 4.718 bitcoin from the victim's Blockchain.com account into approximately 60,863,026 Nigerian Naira fiat currency. The approximate total of the victim's bitcoin that was

not converted to Nigerian Naira and that remained in the form of bitcoin in the TARGET ACCOUNT (as of August 5, 2022) was .54122 bitcoin. The 60,863,026 Nigerian Naira currency and the .54122 bitcoin are the TARGET ASSETS, which are now being sought for seizure. Below is an example of one of the 20 deposits into Igbo's statements of the victim's bitcoin, reflecting that the amount of bitcoin from the victim deposited on June 29, 2022, was .49312662 and that this bitcoin was converted into 6,006,999.94 Nigerian Naira fiat currency on that same day.

**busha**
Transactions Statement
1/6/2022 - 29/6/2022

**Praise Igbo**

| Date | Description | Credit | Debit | Reference |
|---|---|---|---|---|
| 29/6/2022 | Sold Bitcoin To Cash | NGN 6006999.94 | - | ORD_h4W8HcTsnP |
| 29/6/2022 | Sold Bitcoin To Cash | | - BTC 0.49299349 | ORD_h4W8HcTsnP |
| 29/6/2022 | Received BTC From BTC address | BTC 0.49312662 | - | DPST_9owLmTc7SR |

26.   After the last transfer of the victim's bitcoin on August 5, 2022, there were numerous other relatively minimal transfers of bitcoin into the TARGET ACCOUNT. At this time, I am not aware of the origins of these subsequent transfers of bitcoin but believe that much or all originated from other victims.

27.   On May 19, 2023, the Affiant sent a letter to the Busha Exchange, 13 Merryweather Place, London, EN, SE 10 8BN, via email to compliance@busha.co, requesting that the funds associated with these two cryptocurrency addresses be frozen until a formal seizure warrant was obtained. Within days of this request and based on this request, the Busha Exchange froze the funds associated with these two cryptocurrency wallet addresses (TARGET ACCOUNT). After the Busha Exchange froze the TARGET ACCOUNT, the Busha Exchange advised through email correspondence at complaince@busha.co that the funds in Praise Igbo's wallet were in the following forms and worth the following amounts:

14

- 77.5 Million Naira (approximately US$101,000)
- 0.62209497 BTC (approximately US$16,000)
- 0.81011628 ETH (approximately US$1,400)
- 0.102125 LTC (approximately US$10)

28. On August 8, 2023, the Busha Exchange provided an updated balance of the TARGET ACCOUNT in the following forms and worth the following amounts:

- 71,201,417.55 Naira
- 0.57180235 BTC
- 0.77191757 ETH
- 0.102125 LTC

29. The TARGET ASSETS in the TARGET ACCOUNT are held by the Busha Exchange, located in Nigeria with an operational office in London, England. I believe that a federal magistrate judge in the United States has the authority to sign seizure warrants for the seizure of property located outside of the United States, including property in Nigeria or in England under civil seizure authority set forth in 18 U.S.C. § 981(b)(3) and under criminal seizure authority set forth in 21 U.S.C. § 853(l). Therefore, I believe that a federal magistrate judge in the United States has the authority to sign a federal seizure warrant, authorizing the seizure of the TARGET ASSETS in the TARGET ACCOUNT, located in Nigeria with an operational office in London, England.

**Conclusion**

30. Based on the investigation, which included a blockchain analysis of the victim's funds, which the victim intended to be invested in bitcoin, the victim's funds were transferred via wire to the Busha Exchange without the victim's approval or knowledge. I believe that the suspect committed wire fraud by perpetrating the fraud via wire communications, by the victim setting up accounts at the suspect's instructions via wire, by the victim transferring his funds for supposed investment via wire, and by the fraudulent representation of the victim's balance via wire. I also

believe that, although there were bitcoin transfers into the TARGET ACCOUNT after the victim's bitcoin deposits which were also converted into Nigerian Naira fiat currency and a portion kept as bitcoin, the TARGET ACCOUNT was frozen by the Busha Exchange in late May 2023, within one year of the victim's bitcoin deposits in June, July, and early August 2022 and, thus, pursuant to the fungibility statute in 18 U.S.C. § 984, identical property, namely bitcoin and Nigerian Naira, were found in the same account where the fraud proceeds had been kept.  I also believe that the suspect committed money laundering by transferring the victim's bitcoin, without his approval or knowledge, from an account in the United States to an account outside of the United States, in Nigeria, and then converting the victim's bitcoin into Nigerian Naira, and pooling the victim's funds with other bitcoin that was converted into Nigerian Naira, and that the suspect engaged in these transactions in an attempt to conceal or disguise the location, source, ownership, and control of the proceeds of the wire fraud offense.  Therefore, the affiant believes that there is probable cause that this constituted violations of the TARGET OFFENSES and that, thus, the TARGET ASSETS in the TARGET ACCOUNT are subject to forfeiture.  The Affiant also believes that a federal magistrate judge in the United States has the authority to sign a seizure warrant, authorizing the seizure of the TARGET ASSETS in the TARGET ACCOUNT, located in Nigeria with an operational office in London, England.

31.     Because there is probable cause that Igbo committed the TARGET OFFENSES, I believe that there is probable cause to seize 60,863,026 in Nigerian Naira fiat currency and .54122 bitcoin from the TARGET ACCOUNT.  60,863,026 Nigerian Naira fiat currency is the total amount of Nigerian currency that the victim's bitcoin was converted into the same day as each of the twenty transfers (amounting to a total of approximately 4.718 bitcoin) were deposited into the TARGET ACCOUNT.  .54122 bitcoin is the approximate total amount of the victim's bitcoin that

16

originated from the victim (via deposits on August 3 and August 5, 2022), that was not converted into Nigerian Naira and that remained in the form of bitcoin in the TARGET ACCOUNT.

32. Based on my familiarity with cryptocurrency and funds held in foreign accounts, I am aware that they can be transferred between wallets with ease and speed. Although these funds are currently frozen by the Busha Exchange voluntarily, if this freeze is relaxed or lifted, the suspect in this case may attempt to transfer the stolen funds to a different wallet to avoid seizure. Given these circumstances, I believe that it is imperative that the frozen funds be seized expeditiously to prevent the possibility of the suspect relocating the funds beyond the reach of law enforcement.

33. In consideration of the foregoing, I respectfully request that this Court issue a seizure warrant for the TARGET ASSETS in the TARGET ACCOUNT, authoring the seizure of the TARGET ASSETS.

Respectfully submitted,

*Kristen McKnight*
Deputy Kristen McKnight
East Baton Rouge Sheriff's Office

Affidavit submitted by email/PDF, and attested to me as true and accurate by telephone, consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3) on this __31st__ day of __October__, 2023.

HONORABLE RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>60,863,026 in Nigerian Naira currency and .54122 bitcoin in the Account Name of Praise Igbo at the Busha Cryptocurreny Exchange | )<br>)<br>)  Case No. 23-MJ-106<br>)<br>) |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the __United Kingdom__ District of _____ be seized as being subject to forfeiture to the United States of America. The property is described as follows:

60,863,026 in Nigerian Naira fiat currency and .54122 bitcoin in the Busha Cryptocurreny Exchange Account in the Name of Praise Igbo, Date of Birth: September 1, 2001, email address: praisehumphery295@gmail.com, Bank Verification No. 22521740580, and associated with the following two cryptocurrency addresses: 3Kd5GFdcsvJQiCUdCwkzPZDPYhCZ2wBPQ7 and 3JWUC5JwBaGVXyrYEbEH97gRf9wSGW7yfu

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before __11/14/2023__
*(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to __Magistrate Judge Richard L. Bourgeois, Jr.__.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days (not to exceed 30)   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  10/31/2023 at 1:00pm

*Judge's signature*

City and state:  Baton Rouge, Louisiana           Magistrate Judge Richard L. Bourgeois, Jr.
*Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture (Page 2)

| **Return** |||
|---|---|---|
| Case No.: 23-MJ-106 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of: |||
| Inventory of the property taken: |||

**Certification**

  I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

                     _____
                        *Executing officer's signature*

                     _____
                         *Printed name and title*

[Print]　　[Save As...]　　[Reset]